UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 5:25-cr-00127-GFVT-MAS-8 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| QUINCINO LAMONT WAIDE, JR., | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The United States jointly indicted Defendant Quincino Lamont Waide, Jr. alongside seven others, on charges arises out of the murder of a federal witness, Kristopher Lewis. The United States believes that members of a criminal street gang, the Hot Boyz, committed the murder to prevent Lewis from testifying at Defendant Rollie Lamar's then-upcoming trial. At present, a total of eight individuals are charged with offenses relating to this murder. Seven of the Defendants face charges that stem from the planning and commission of the murder, while Defendant Quincino Lamont Waide, Jr. stands alone charged with accessory after the fact.

In accordance with these charges, seven of the Defendants face the possibility of the death penalty, pending the Attorney General's determination, while Waide faces a statutory maximum sentence of fifteen years for his charged offense. Waide believes he will be prejudiced by a joint trial due to spillover evidence and a potential lengthy delay in bringing the matter to trial. Thus, he moves to sever his trial from the remainder of the Defendants. Because Waide cannot demonstrate specific, compelling, and actual prejudice unique to a joint trial that

outweighs the inefficiency of separate trials, the Court will **DENY** his Motion for Severance.

**[R. 222.]**

I

On October 2, 2025, an indictment returned by a federal grand jury charged six individuals, William Quejohn Dixon, Rollie Deshawn Lamar, Daquis Damarr Sharp, Desmond Elijah Bellomy, Jatiece Alvin Parks, and Deangelo Montavious Boone, in connection with the murder of federal witness Kristopher Lewis.  [R. 1.]  These Defendants all face charges relating to the planning and commission of the murder.  *Id.*  Specifically, the United States believes Lamar hired Dixon, Sharp, Bellomy, and Parks to commit the murder, and Boone acted as a payment intermediary between Lamar and the alleged gunmen.  [R. 260 at 2.]  At the time of Lewis' death, he intended to testify as a cooperating witness in Lamar's then-upcoming federal criminal trial for narcotics trafficking and money laundering charges.  [R. 1.]

On November 6, 2025, a federal grand jury returned a superseding indictment which named two additional Defendants, Casey Allison Morris and Quincino Lamont Waide, Jr.  [R. 86.]  The United States believes that many of the Defendants, including Waide, are members of a criminal street gang, the Hot Boyz.  *Id.*  Morris is believed to have been involved in a romantic relationship with Bellomy at the time of the charged offenses.  Morris, like the six original Defendants, faces charges stemming from the planning of the murder.  *Id.*  Waide, however, stands alone charged with a single count of accessory after the fact.  *Id.*  Unlike his co-Defendants, the United States does not believe that Waide participated in the planning or commission of the murder.  [R. 251 at 18-19.]  Rather, the United States believes the alleged gunmen unexpectedly lost their planned means of transportation shortly prior to the murder, which required them to recruit Waide's assistance.  [R. 260 at 5.]

The United States intends to prove that the alleged gunmen planned to use Morris' vehicle to commit the murder on September 29, 2023.  *Id.*  However, becoming suspicious that Bellomy had been paying visits to a former romantic connection, Morris placed a phone in her vehicle to monitor Bellomy's travel on the night of September 27, 2023.  *Id.*  The United States believes that the location data retrieved from the phone confirmed Morris' suspicions and eventually led to Morris revoking her consent for the Defendants to use her vehicle on the morning of September 29, 2023, to commit the murder.  *Id.*  Law enforcement believes that Morris' revoked consent led the Defendants to recruit Waide's assistance either late on September 28 or early on September 29.  *Id.*  They believe that the gunmen instead used Defendant Sharp's vehicle to commit the murder, which created the need to dispose of that vehicle and obtain an alternative "getaway car."  *Id.*  Waide is alleged to have assisted in obtaining a Dodge Durango for the Defendants, and to have received payment for that assistance.  *Id.*

The superseding indictment charges six offenses.  The first two counts of the superseding indictment charge five of the Defendants—Dixon, Lamar, Sharp, Bellomy, and Parks—with witness tampering by killing, and conspiracy to commit the same, in violation of federal law.  [R. 86 at 1-3.]  The next three counts charge seven of the Defendants—Dixon, Lamar, Sharp, Bellomy, Parks, Boone, and Morris—with use of interstate commerce facilities to commit murder-for-hire and conspiracy to commit the same, as well as conspiracy to use a firearm in a crime of violence, all in violation of federal law.  *Id.* at 3-6.  The last count of the superseding indictment charges only Waide with accessory after the fact to federal murder.  *Id.* at 6.

Waide now moves to sever his trial from the trial of his co-Defendants.  [R. 222.]  Waide believes a joint trial risks actual prejudice to him and requests a separate trial on his charge.  *Id.*

3

The United States has responded in opposition to his Motion, and Waide has filed his reply. [R. 260; R. 265.] Thus, this matter is ripe for review.

## II

## A

Federal Rule of Criminal Procedure 8(b) allows multiple criminal defendants to be indicted in the same proceeding under certain circumstances. According to the rule, an indictment may charge two or more defendants who "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Where multiple defendants are jointly charged in the same criminal proceeding, there is a strong presumption in favor of trying the co-defendants together. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "serve society's interest in the speedy and efficient resolution of cases when the charges will be proved by the same evidence and result from the same acts." *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) (quoting *United States v. Caver*, 470 F.3d 220, 237 (6th Cir. 2006)).

Co-defendants may be severed from one another and tried in separate proceedings where substantial prejudice will result from a joint trial. Federal Rule of Criminal Procedure 14 indicates:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). The Supreme Court interpreted Rule 8 and Rule 14 to allow severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 537. For example, severance may be appropriate where evidence is

admissible against one of the defendants but not another, where two defendants have "markedly different degrees of culpability," or where one defendant's exculpatory evidence would be inadmissible in a joint trial. *See Martinez*, 432 F. App'x at 529.

Nevertheless, severance is not required merely because one defendant may have a higher chance of acquittal if he is tried separately from his co-defendants. *Id.*; *Zafiro,* 506 U.S. at 540; *United States v. Graham*, 796 F.3d 332, 369 (4th Cir. 2015) ("The defendant seeking severance must show that actual prejudice would result from a joint trial . . . and not merely that a separate trial would offer a better chance of acquittal."). Finally, even if there is a high risk of some prejudice if a defendant is jointly tried, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *Zafiro*, 506 U.S. at 539). Accordingly, the movant must show "compelling, specific, and actual prejudice" will result from a joint trial. *Id.* (citations omitted).

**B**

If defendants are properly joined under Rule 8, to prevail on a motion to sever, a defendant must show that allowing a joint trial would burden a specific trial right or prevent the jury from making a reliable finding on guilt or innocence. *See Zafiro*, 506 U.S. at 539. Waide does not contend that the Defendants are improperly joined under Rule 8, as they are alleged to have engaged in the same series of acts of transactions. *See United States v. Gjokaj*, 555 F. App'x 581, 587 (6th Cir. 2014). Waide also does not allege that any specific trial right, such as the ability to present exculpatory evidence or confront a witness, would be burdened by a joint trial. *C.f. United States v. Bradley*, 2014 WL 255841, at *6-7 (E.D. Mich. Jan. 23, 2014) (granting in part the defendant's motion to sever where the defendant asserted a Confrontation Clause challenge to a joint trial).

Rather, Waide's assertions can be generally grouped into two categories. First, Waide asserts concerns regarding "spillover" evidence which he believes more directly implicate his co-Defendants. [R. 222-1 at 5-11.] Waide contends that because of this "spillover" effect, the jury will not make an accurate assessment on his guilt or innocence, and will find him "guilty by association," as he avers this Court has done on two separate occasions. *Id.* Second, Waide expresses concern that the delay in bringing this case to trial, due to its unique posture with seven death penalty eligible Defendants, will unduly prejudice him by requiring an "oppressive and unfair length of detention," while awaiting trial. *Id.* at 11. The Court considers these contentions in turn.

**1**

Waide's first arguments in favor of severance relate to the risk of spillover evidence. "Spillover evidence is evidence admitted against one defendant 'that the jury should not consider against [another] defendant and that would not be admissible if [the other] defendant were tried alone." *United States v. Taylor*, 640 F.Supp.3d 757, 766 (E.D. Ky. 2022), *aff'd sub nom. United States v. Herrell*, ___ F.4th ___ (6th Cir. 2026) (quoting *Zafiro*, 506 U.S. at 539). Spillover evidence can certainly "threaten a reliable judgment if admitted in a joint trial." *Id.* However, the "mere existence" of spillover effect will not justify severance unless the defendant shows that it will prejudice him. *Id.* (citing *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985)). Moreover, the defendant must overcome the presumption that juries are "capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995).

Waide brings his spillover argument under several different theories, all embracing the general theme that he will be prejudiced by evidence of his co-Defendant's alleged and admitted

6

participation in the instant matter, as well as other crimes. First, Waide contends that the disproportion in the volume of evidence that pertains to him, in comparison to his co-Defendants, favors severance. [R. 222-1 at 5-6.] Specifically, Waide notes that, in this case, documents and recordings in excess of 40,000 pages have been produced in discovery. *Id.* Of these documents, less than ten are directly related to Waide—that is, pertain to Waide's alleged personal involvement in the charged offenses. *Id.* Thus, Waide believes that his participation in a joint trial will allow the introduction of evidence that concerns "issues, subjects, and discussions," that Waide is neither the topic of nor a participant in. *Id.* at 6.

Notably, Waide does not contend that evidence of his co-Defendants commission of the instant offenses would not be *admissible* against him, which is the touchstone of spillover evidence. Nor could he, because Waide is charged with accessory after the fact and thus, "the Government must prove the commission of the underlying offense" to sustain a conviction against him. *United States v. Boyd*, 640 F.3d 657, 662 (6th Cir. 2011) (citing 18 U.S.C. § 3). As such, evidence relating to the commission of the underlying federal murder offense would be relevant to Waide's trial, whether tried separately or jointly. It follows then that any negative or inculpatory effect of this evidence will be present whether Waide's trial is severed or joint. *See e.g. Woods v. United States*, 2011 WL 284618, at *8 (E.D. Tenn. Jan 25, 2011) (quoting *United States v. O'Bryant*, 998 F.2d 21, 26 (1st Cir. 1993)) ("Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect."). Although Waide may wish the government would not introduce evidence that does not "directly relate" to his involvement, this feature is not unique to a joint trial and would not be remedied by severing Waide's trial. Consequently, Waide cannot

demonstrate that any prejudice resulting from evidence of his co-Defendants' involvement in the instant offenses is attributable to a joint trial, and severance is not warranted on this ground.

Waide's second "spillover" argument relates to the criminal histories and checkered pasts of his co-Defendants, which Waide classifies as "the most concerning evidence." [R. 222-1 at 6.] Waide notes that, in addition to the instant charge, members of the Hot Boyz have either been identified as a suspect, charged with, or convicted in relation to nine other shooting or homicides, including the shooting of a Lexington Police Officer. *Id.* Waide then outlines discovery produced by the United States in this matter which details "a litany of uncharged conduct" that the government believes Waide's co-Defendants have committed, including specific instances that he believes would result in the most prejudice, if admitted. *Id.* at 7-8. Waide believes the government will seek to introduce this evidence under Federal Rule of Evidence 404(b), which allows admission of past crimes, wrongs, or acts if offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). Thus, Waide believes the jury will look to this evidence and adjudge Waide "guilty by association," rather than considering the evidence of his guilt or innocence offered at trial. *Id.*

In support of these contentions, Waide cites two specific instances on which he claims that the Court rendered a decision which, at least in part, rested on Waide's association with the Hot Boyz or its individual members. *Id.* at 8-9. First, Waide quotes from the opinion rendered by United States Magistrate Judge Matthew Stinnett which ordered Waide's detention pending resolution of his charges in a separate firearm matter. *Id.* In said opinion, Judge Stinnett detailed the background of violence involving the Hot Boyz gang in an effort to "properly analyze the company Waide keeps." [R. 222-5 at 1.] Later in the opinion, Judge Stinnett elaborated on the

8

specific incidents that the United States believed Waide was personally involved in, including the instant Lewis homicide. *Id.* at 2-3.

In analyzing Waide's involvement in the Lewis homicide, Judge Stinnett noted that the evidence presented at the detention hearing did not necessarily suggest that Waide "was involved in or ultimately responsible for the Lewis murder; however, it [did] strongly suggest that Waide is uncomfortably close with murder suspects and a getaway car."[1] *Id.* at 3. Then, in the conclusion to the opinion, Judge Stinnett stated, "it is difficult to overcome that Waide, his associates, and his adversaries appear to have been both the victims and perpetrators of violence for years." *Id.* at 4. After considering the relevant factors, Judge Stinnett ultimately concluded that the United States had demonstrated by clear and convincing evidence that Waide posed an "unmitigable danger to the community or others," and ordered his pretrial detention. *Id.*

The next instance cited by Waide concerns the sentencing hearing in the aforementioned firearm case. At the sentencing hearing, when addressing the §3553(a) sentencing factors, the United States asked the Court to consider Waide's involvement with the Hot Boyz in considering his nature and characteristics. [R. 222-6 at 2-3.] The United States then proceeded to detail some of that involvement, including crimes that the United States believes Waide to be directly involved in. *Id.* In response, counsel for Waide asserted that the United States was merely holding Waide "guilty by association" and posited that the Court should not consider Waide's relationships with members of the Hot Boyz in imposing a sentence. *Id.* at 4.

---

[1] In a separate section of his Motion, Waide extrapolates portions of this detention opinion and concludes that the government's evidence of his guilt in the instant case is "limited at best," based in large part on some of Judge Stinnett's remarks in the detention opinion. [R. 222-1 at 10-11.] Waide believes this entitles him to severance based on "less culpability." *Id.* However, this detention opinion predated Waide's indictment in the present case by several months and should not be taken as the Court expressing any opinion on the weight of the evidence against Waide in this then-uncharged offense.

When the Court stated its reasons for the sentence imposed, the Court made several findings, considering the enumerate §3553(a) facts and related policy statements from the United States Sentencing Commission. *See id.* at 5-7. Specifically, when considering Waide's history and characteristics, the Court noted that Waide had chosen to surround himself with individuals entangled in a life of violence and had himself engaged in that violence, at times. *Id.* at 7. In response to Waide's argument that the United States merely held him guilty by association for past transgressions of his associates, the Court stated: "Sometimes guilt by association goes by another name; it's called conspiracy. I'm not saying that's what's going on here necessarily, but you show me who your friends are Mr. Waide, and I can predict your future." *Id.* Later in the hearing, Waide's counsel, presumably believing that the Court intended to express an opinion on the Lewis case with its statement, noted her objection to the Court's sentiment. *Id.* at 8. Intending no such effect, the Court then clarified:

> This is not the proceeding where we determine whether that's a conspiracy or not a conspiracy. . .[T]his isn't the context in which that is to be determined. I'm trying to make a point really, not a legal point, about whether you're going to be convicted or not in any other proceeding. I'm trying to make a point about how you're living your life, and that does make a difference the context of this particular case.

*Id.* at 8-9. Although Waide acknowledges that the Court must take a defendant's history and characteristics into account in determining pretrial detention and a sentence, he maintains that the above examples indicate that "significant decisions" have been made by the Court in large part due to his association with the Hot Boyz. [R. 222-1 at 9-10.] Thus, Waide contends that "[i]f those educated and practiced in legal standards repeatedly revert[] back" to Waide's connection to the Hot Boyz as the basis for their decisions, a jury would not be able to adjudge Waide's guilt or innocence without considering the conduct of his associates. *Id.* at 10. Waide then avers that

no limiting jury instruction would cure the risk that the jury will improperly rely on such evidence and convict Waide by association. *Id.*

In response to Waide's first point—that evidence of his co-Defendants past transgressions will be admitted in the joint trial—the United States notes that Waide has not explained how this past conduct would be admitted under Federal Rule of Evidence 404(b). [R. 260 at 17.] The United States submits that it "would not request, and the Court would undoubtedly not allow, the Hot Boyz' various criminal histories to come in *cart blanche* during the guilt phase of the trial." *Id.* More specifically, the United States asserts that because Lewis was not himself a member of the Hot Boyz, many of the past acts involving inter-gang violence would not be relevant or admissible. *Id.* Further, to the extent some past acts are relevant, such as past shootings that purportedly involved the same vehicle as the instant case, the Court would narrow the admissibility of those to a permissible use under Rule 404(b). *Id.* And finally, because the United States must prove the underlying offense, any Rule 404(b) evidence admitted against the co-Defendants would necessarily be probative of that underlying offense, and thus, admissible against Waide even in a separate trial. *Id.*

Waide's argument on this point is similarly unavailing. As noted above, the mere existence of spillover evidence does not warrant severance, absent a showing of prejudice. *United States v. Alexander Flores*, 510 F.Supp.3d 558, 563 (S.D. Ohio 2020) (citing *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006)) ("Joint trials regularly involve evidence that is admissible against some defendants but not others. This alone is not a reason for severance."). Further, similar to his argument based on the disproportion of evidence, Waide has not identified any evidence that would be both admissible against his co-Defendants in a joint trial and inadmissible against him in a separate trial. For example, the Court fails to see how

11

Defendant Bellomy's car accident and subsequent fleeing of the scene from 2021, or Defendant Boone's uncharged, alleged sexual assault would be relevant or admissible in this trial.  [R. 222-1 at 7-8.]

Further, to the extent that evidence of past conduct of Waide's co-Defendants would be relevant or admissible to prove the charges against them, Waide fails to explain why that same evidence would not be admissible against him even in a separate trial.  Again, to sustain a conviction on Waide's charge of accessory after the fact, the government necessarily has to prove that the underlying federal murder was committed.  Thus, at this juncture, it seems that any evidence relevant and admissible against Waide's co-Defendants to prove their commission of the underlying offense would also be relevant and admissible against Waide in either a joint or separate trial.[2]  Accordingly, Waide's unsupported speculation as to the possible, yet highly unlikely, introduction of his co-Defendants past crimes, wrongs, or acts fails to show "compelling, specific, and actual prejudice" to warrant severance.  *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

Turning to Waide's averments that the Court has itself found him guilty by virtue of his association with the Hot Boyz and thus, the jury will make the same error, these contentions are similarly without merit.  Most notably, on both occasions cited by Waide, the Court was not charged with determining his guilt or innocence in any crime, so Waide's attempt to draw a parallel between the Court's analysis and jury deliberation constitutes false equivalence.  Further, the Court's consideration of "the company Waide keeps" was not only proper on those two occasions but *required* by federal law.

---

[2] Of course, the Court can only speculate that this would be the case based on the record currently before it, and does not intend this statement as a preemptive ruling on the admissibility of evidence that may be introduced at trial in this matter.

Beginning with Judge Stinnett's opinion which ordered Waide's detention pending the resolution of his firearm charges, the Bail Reform Act mandates that courts take into consideration, *inter alia*, a defendant's character, family ties, community ties, and past conduct, including criminal history. 18 U.S.C. § 3142(g). Although the criminal behavior of a defendant's associates could certainly inform this analysis, Judge Stinnett carefully parsed out the evidence proffered which specifically pertained to Waide's past conduct and did not credit the evidence which solely pertained to Waide's associates. [R. 222-5 at 3-4.] Judge Stinnett even noted that "the United States [] provided more smoke than fire," but nevertheless concluded that "there [was] enough fire to conclude Waide's conduct and associations lead to a conclusion of overall dangerousness." *Id.* at 4.

Similarly, in imposing Waide's sentence in his firearm case, federal law requires the Court to take into consideration several factors, including "the history and characteristics of the defendant." 18 U.S.C. § 3553(a). Again, the individuals that a defendant chooses to surround himself with will certainly inform this analysis, and Waide does not contend otherwise. [*See* R. 222-1 at 9.] In any event, the Court specifically noted that it was not making a "legal" point about Waide's guilt or innocence with its statements during sentencing. [R. 222-6 at 9.] The statements at sentencing that Waide takes issue with can be more fairly characterized as advice to Waide, rather than legal analysis.

Far from casting aspersions on Waide or making any determination on his guilt or innocence, the Court sought to advise Waide that he cannot participate in criminal activity in the future and then hide behind a "guilty by association" argument. The Court took care to stress that it was not indicating that Waide had involved himself in a criminal conspiracy. Rather, the Court sought to advise Waide that if he desired to live differently in the future, he should

13

reconsider the individuals that he chooses to surround himself with.  Thus, Waide's conclusory allegations that the Court has held him "guilty by association" are inapposite to whether a jury will make a fair assessment as to his guilt or innocence in this matter.

Finally, Waide fails to demonstrate why a limiting instruction to the jury would not protect him.  The Supreme Court has noted that "limiting instructions. . .often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.  The Sixth Circuit has recognized that "in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant." *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) (quoting *United States v. Warner*, 690 F.2d 545, 553 (6th Cir. 1982)).  Even so, the Sixth Circuit adheres to the view that "[j]uries are presumed to be capable of following instructions. . .regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Wilson*, 344 F. App'x 134, 140 (6th Cir. 2009) (quoting *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002)).

Waide asserts, *ipse dixit*, that "[n]o limiting instruction could cure the very real likelihood that the jury would likely rely on" evidence of Waide's purported association with the Hot Boyz in its deliberation.  [R. 222-1 at 10.]  Waide's only attempt to overcome the presumption that a limiting instruction would cure any prejudice stems from the above-referenced occasions on which the Court supposedly took these associations into account in rendering its decisions. *Id.* at 9-10.  However, as discussed *infra*, the analogy holds no weight because the Court was not charged with determining his guilt or innocence on either occasion.  Nor is the jury likely to be confused by which defendant to attribute certain evidence to.  Although the volume of evidence in this case will inevitably be plentiful, the record does not reflect that the facts of this case are so

14

"intricate or complex as to render the jury unable to segregate the evidence associated with each defendant's individual actions." *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008).

At bottom, Waide does not find himself in a unique situation. "The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases." *Causey*, 834 F.2d at 1288. Nevertheless, "a defendant is not entitled to severance simply because evidence against a codefendant is far more damaging than the evidence against him." *Id.* Faced with a dearth of evidence that any true "spillover" evidence exists, much less that Waide will be prejudiced by such evidence, Waide cannot overcome the strong preference for joint trials on these grounds.

**2**

Waide's second argument relates to a "significant and rare element" in this case: the government's potential pursuit of the death penalty against some of the Defendants. [R. 222-1 at 11.] As noted above, all of Waide's co-Defendants currently face multiple death penalty eligible charges. [*See* R. 86.] Waide, on the other hand, faces a single charge which carries a maximum sentence of fifteen years imprisonment. *Id.* When the United States contemplates seeking the death penalty, certain procedures specified by Department of Justice Policy must be followed. *See* U.S. Dep't of Justice, *Justice Manual* §9-10.000 *et seq*. To discharge its obligations under the Federal Death Penalty Act, Department of Justice Policy requires an extensive internal review process, with the Attorney General making the final determination as to whether the United States may seek the death penalty for any defendant. *Id.*

As relevant here, when the United States contemplates requesting authorization to seek the death penalty, the defendants are given a "reasonable opportunity" to conduct mitigation investigations and present information to the United States Attorneys' Office to inform the

Office's recommendation to the Department of Justice. *Id.* at §9-10.080. The defendants then have the opportunity to present information to the Department of Justice prior to the Attorney General's decision on whether to seek the death penalty. *Id.*; *Id.* at 9-10.130. Although the Justice Manual does not provide a time limit for these investigations, once the Attorney General makes the final decision, the United States Attorney or Assistant Attorney should "promptly inform the district court and counsel for the defendant." *Id.* at 9-10.150.

Because they face death penalty eligible charges, Waide's co-Defendants have devoted significant attention to the mitigation investigation and understandably have predominantly focused their efforts on said investigation since the inception of this case. [*See* R. 104.] In light of the foregoing, on November 10, 2025, the Defendants jointly requested that the Court continue the trial generally pending the Attorney General's decision on whether the death penalty will be sought. *Id.* The Court granted the Defendants' request and since November 12, 2025, trial in this matter has been continued generally, pending the Attorney General's decision. [R. 112.] Because Waide is not charged with a death penalty eligible offense, he asserts that the continued delay in his case "is unnecessary and could result in an oppressive and unfair length of detention should the government seek to detain him while awaiting trial."[3] [R. 222-1 at 11.] Thus, Waide contends that severance is required to avoid "undue delay" in bringing him to trial. *Id.*

At the outset, the Court notes that death-eligible defendants are often tried alongside defendants that are not death eligible. *See e.g. United States v. Edelin*, 118 F.Supp.2d 36 (D.D.C. 2000); *United States v. Aiken*, 76 F.Supp.2d 1346 (S.D. Fla. 1999). Thus, it seems

---

[3] Although the Court has not yet determined whether Waide will be detained pretrial, the United States has sought such detention. [R. 261; R. 262.] Thus, the Court will address these concerns out of an abundance of caution.

Waide finds himself in the same situation as every other non-capital defendant jointly charged with capital defendants, with respect to his concerns of the delay.  Pursuant to Department of Justice Policy, every capital defendant is given the same opportunity to compile mitigation investigation materials, while his non-capital counterpart sits idly by.  Thus, the Court would hesitate to sever Waide on this basis alone, which would suggest the creation of a *per se* rule that non-capital defendants must be severed from capital defendants.[4]

Waide has also failed to ground this argument in any particular right.  To the extent Waide wishes to assert any speedy trial rights as the basis for this motion, he must do so explicitly, as "the failure to assert the right will make it difficult for a defendant to prove that he [will be] denied a speedy trial."  *Barker v. Wingo*, 407 U.S. 514, 532 (1972).  Nevertheless, these complaints constitute "non-trial prejudice" as even lengthy, oppressive pretrial detention does not generally impair a defendant's ability to prepare for trial or mount a defense.  *United States v. Vazquez*, 2023 WL 3324674, at *11 (E.D. Ky. May 9, 2023).  Such non-trial prejudice is entitled to less weight when evaluating speedy trial complaints.  *Id.* (citing *United States v. Thirion*, 813 F.2d 146, 154 (8th Cir. 1987)).

At any rate, although Waide's concerns on this front warrant some consideration, he has not shown that any resulting prejudice outweighs the interests of judicial economy and other practical considerations. *United States v. Nucolovic*, 672 F.Supp. 282, 286 (E.D. Mich. 1987) ("The need for efficient trials must be surmounted by the harm of potential prejudice in order for a defendant to prevail in a motion for severance under Rule 14.").  First, as the United States

---

[4] The Court distinguishes a factually similar case out of the Southern District of New York on this basis. *See United States v. Byrd*, 466 F.Supp.2d 550 (S.D.N.Y. Dec. 26, 2006).  In *Byrd*, the Court noted that, at the time Congress passed the Speedy Trial Act in 1974, the death penalty was in moratorium, so Congress did not "consider the vicissitudes of this situation." *Id.* at 553.  Conversely, this Court cannot conclude that by enacting the Speedy Trial Act, Congress would have intended the Government to twice prove any case that includes both a capital defendant and a non-capital defendant.

notes, severing Waide would place a significant burden on the Court, the government, and the public. Conducting two trials in this matter would require the Court to empanel two juries, as well as duplicative presentation of evidence. The United States would be required to twice put on proof of the underlying federal murder, once to try the principals with the actual offense and a second time to try Waide for accessory after the fact. *See Buchanan v. Kentucky*, 438 U.S. 402, 419 (1987) (referring to such effect as an "intolerable administrative burden" on the government.").

Sixth Circuit precedent directs this Court to carefully weigh any possible prejudice against "the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof. *Corbett v. Bordenkircher*, 615 F.2d 722, 725 (6th Cir. 1980) (citation omitted). Waide does not dispute that proof of the underlying federal murder must be presented regardless of whether he is tried separately or jointly. He nonetheless asserts that any evidence of actions undertaken prior to the murder are not relevant to his charge. [R. 265 at 4.] While this may temper some of the concerns related to judicial economy, severance is not warranted just because a defendant will have to endure presentation of evidence that is not relevant to his charge, nor is all interest in judicial efficiency usurped by the fact that the evidence at both trials would not be identical.

Finally, the Court gives credence to a final, practical consideration: witness safety. In similar cases, courts have noted that "[t]he seriousness of the offense – the successful hired killing of a federal witness – weighs heavily against severance." *United States v. Age*, 2021 WL 5961468, at *4 (E.D. La. Dec. 16, 2021) (citing *United States v. Saltzman*, 153 F.Supp.3d 245, 252-53 (D.D.C. 2016) (collecting cases)). This makes logical sense because if the trial is severed, many of the witnesses must necessarily testify twice, revealing their identities and

testimony at the first trial and risking their safety prior to the second trial. *See United States v. Cerritos*, 180 F.Supp.3d 432, 441 (E.D. Va. 2016); see also *United States v. Milburn*, 2008 WL 2557973, at * (N.D. Cal. June 24, 2008) ("if the trial were severed, the witnesses would be known and at risk long before the second trial started.").

Waide himself acknowledged this risk in prior briefing, noting that the government had faced significant challenges in securing witnesses to testify against Waide's co-Defendants as "doing so not only invites significant danger to their own lives but the lives of their family and other loved ones." [R. 232 at 4-5.]   Aside from the danger to these witnesses, the government would face considerable difficulty finding witnesses to testify not once, but twice, knowing that they are jeopardizing their safety and the safety of their families.   These considerations all favor trying the Defendants jointly, and Waide's conclusory allegations of possible prejudice are insufficient to overcome the presumption for joint trials, particularly with these interests in mind.

### III

Defendants face a "heavy burden" in moving for severance. *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990).  Such a burden cannot be overcome by the "generalized concerns" asserted by Waide in his motion. *Herrell*, ___ F.4th at ___.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Waide's Motion to Sever **[R. 222.]** is **DENIED**.

This the 9th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge

19