**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL NO. 5:25-CR-127-KKC-MAS** ***ELECTRONICALLY FILED***

**UNITED STATES OF AMERICA** **PLAINTIFF**

**VS.** **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO REVOKE DETENTION ORDERS AND FOR DE NOVO REVIEW**

**DEANGALO MONTAVIOUS BOONE** **DEFENDANT**

* * * * * * *

The Defendant, Deangalo Montavious Boone, by counsel, respectfully submits this Memorandum of Law in support of his Motion to Revoke Detention Orders and for De Novo Review. [R. 311].

## I. PROCEDURAL BACKGROUND

### A. Charges Against Defendant Boone

On October 2, 2025, a federal grand jury returned an Indictment against six (6) Defendants, with an array of charges arising from the murder of Kristopher Lewis on September 29, 2023. [R. 1, Indictment]. Subsequently, two additional Defendants were added by Superseding Indictment, but no new charges were added against Defendant Boone. [R. 86, Superseding Indictment]. Counts 1 and 2 of the Indictment – which do not name Defendant Boone – alleged violations of the federal murder for hire statute and the conspiracy provisions of that statute. See, 18 U.S.C. § 1512(a)(1)(A) and 18 U.S.C. § 1512(k). Count 3 – which does name Defendant Boone – alleges the use of instrumentalities of interstate commerce, with the intent that the murder of Kristopher

Lewis be committed in violation of the laws of Kentucky and the United States. See, 18 U.S.C. § 1958 and 18 U.S.C. § 2. Additionally, in Count 4, Boone is charged with *conspiracy* to use instrumentalities of interstate commerce with the intent to murder Kristopher Lewis, in violation of the laws of Kentucky and the United States in consideration for a promise to pay something of pecuniary value in violation of 18 U.S.C. § 1958. Finally, in Count 5, Boone is charged with a violation of 18 U.S.C. § 924(o) – that is, knowingly conspiring with others to use, carry and discharge a firearm, including a machine gun, during and in relation to a crime of violence that may be prosecuted in a court of the United States. [R. 86, Superseding Indictment, Counts 3-5].

Initially, the Indictment provided notice of special findings, making each of the Defendants death-eligible pursuant to the provisions of 18 U.S.C. §§ 3591 through 3592. However, as explained below, the United States has advised the Defendant that they will not seek the death penalty against Defendant Boone. [R. 288-2].

**B. <u>The Detention Litigation</u>**

Defendant Boone made his initial appearance and was arraigned on the pending Indictment on October 8, 2025, at which time the United States moved for pretrial detention pursuant to 18 U.S.C § 3142(f). Thereafter, the Court conducted a detention hearing on October 20, 2025. [R. 51, Minute Entry]. At the detention hearing, the Court heard from multiple witnesses and a number of exhibits were admitted into evidence. Subsequently, on October 30, 2025, the Court issued its Memorandum Opinion & Order finding that the Defendant should be detained under the Bail Reform Act ("BRA"). The Court's conclusion was exclusively based on dangerousness as opposed to risk of non-appearance. [R. 76, Memorandum Opinion & Order, Page ID# 462].

Thereafter, Defendant Boone moved to reopen the detention hearing pursuant to the provisions of 18 U.S.C. § 3142(f)(2)(B). Defendant Boone cited five (5) separate reasons for

reopening the hearing including: (1) although Defendant Boone was originally charged with death-eligible crimes, the United States has advised counsel they will not seek the death penalty against the Defendant[1] (2) the criminal charges pending against the Defendant in the Fayette Circuit Court at the time of the initial detention hearing have been dismissed[2]; (3) a new, more stable custodial arrangement is available to the Defendant should he be released on conditions; (4) the Defendant has been continuously incarcerated for a period of ten (10) months [now 13 months] with no prospect of a trial date in sight; and (5) Defendant Boone has maintained his disassociation with all co-defendants or Hot Boys related matters. [R. 288, Motion to Reopen Detention Hearing, Page ID# 2263]. The United States filed a response to the motion to reopen objecting to same. [R. 290, Response].

On September 18, 2026, the magistrate judge ordered reopening of the detention hearing limited to the issues of whether the dismissal of the pending criminal charges against Defendant Boone materially altered the dangerousness calculation under the BRA, and whether additional release conditions should be considered by the Court. [R. 291, Order]. The magistrate did not permit any new evidence at the subsequent hearing, specifically including evidence proffered by the United States at the supplemental detention hearing. [R. 291, Order].

On October 5, 2026, the Court conducted a supplemental detention hearing, at which time it heard brief testimony from Special Agent Issac Robinson, and testimony from Boone's proposed release custodian – Latasha Walker. [R.298, Minute Entry]. Subsequently, on October 21, 2026, the magistrate judge issued a Memorandum Opinion & Order, in which it reconsidered Defendant's pretrial release, but again found that detention under the BRA was necessary. [R. 304, Memorandum Opinion & Order].

---

[1] See R. 288-2, Motion to Reopen Detention Hearing.
[2] See R. 288-3, Motion to Reopen Detention Hearing.

## II. STANDARD OF REVIEW

Under 18 U.S.C. § 3145(b), if a person is ordered detained by a magistrate judge, or a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. That motion shall be determined promptly. At that point, the district court can undertake de novo review of the magistrate judge's decision. See, e.g., *United States v. Crane*, No. 5:15-005-DCR, 2015 U. S. Dist., LEXIS 93105, 2015 WL 4424957, *2 (E.D. Ky. July 17, 2015). Under those circumstances, the district court may, at its discretion, conduct an additional evidentiary hearing. *United States v. Cidraz-Santiago*, 18 F.Supp. 3d 124, 126, (D.P.R. 2014) ("A district court may take additional evidence or conduct a new hearing where appropriate"; *United States v. Dominguez*, 783 F.2d 702, 708 n. 8 (7th Cir. 1986).

Thus, the district court has authority to review the previous detention orders of the magistrate judge, take additional evidence if it so desires, and rule on the merits of the detention decision rendered by the magistrate judge.

## III. THE STATUTORY FRAMEWORK

Pursuant to the BRA, 18 U.S.C. § 3141, et seq. a defendant may be detained pending trial only when a judicial officer "finds no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, certain crimes identified in the statute create a rebuttable presumption that detention is

appropriate.

Section 3142(e) - (f) of Title 18 imposes a "burden of production" on the defendant. *Stone*, 603 F.3d at 945. That burden is not heavy, and the defendant satisfies it when he "comes forward with evidence that he does not pose a danger to the community or a risk of flight." Id. at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The burden of persuasion a to dangerousness remains with the government. Specifically, the United States must persuade the court by *clear and convincing evidence* that no condition or combination of conditions can ensure the safety of the community, or it must persuade the court by preponderance of the evidence that no conditions can ensure the Defendant's appearance at future proceedings. 18 U.S.C. § 3142(e) – (f).[3]

The factors that the Court considers for detention or release are set forth in 18 U.S.C. § 3142(g) as follows: (1) the nature and the circumstances of the offense charged, including whether the offense is a crime of violence…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any persons or the community that would be posed by the person's release.

**1. Nature and Circumstance of the Offense Charged**

The offenses charged here are patently serious, involving the homicide of Kristopher Lewis. The magistrate judge leaned on the seriousness of the charges in terms of the danger that Boone poses to other persons and/or the community. While the Defendant acknowledges the seriousness of the charges, the testimony of Agent Robinson at the original detention hearing revealed several important facts: (1) Boone was not involved in any way in the planning of the

[3] The United States made no attempt to justify detention of Boone on the basis of non-appearance, and the magistrate judge did not consider non-appearance as a basis for detention. [See, R. 76, Memorandum Opinion & Order, Page ID# 462].

murder; (2) Boone did not participate in any surveillance of Lewis and/or his vehicle in order to facilitate the murder; and (3) Boone was not present at, nor did he participate in, the murder of Mr. Lewis. The United State' theory – and it is just that, a theory – is that Boone *brokered* certain payments from Defendant Lamar to the Hot Boyz.

In discussing Boone's role in the murder-for-hire plot, the Court pointed to text messages between Sharp and Dixon, in which Sharp said "Yup an Doja [Boone] said give him 5." [R. 76, Memorandum Opinion & Order, Page ID #457]. There was no explicit mention of Lewis' murder in the referenced text message. However, the United States maintains that Boone brokered certain payments from Lamar to the Hot Boyz after Lewis was killed. The magistrate also found that the United States connected Boone to the murders by call records. Supposedly, Boone was one of the only contacts that both Lamar and Dixon had in common, "meaning that Mr. Boone was one of the only people that when we reviewed the call detail reports, that was in contact with Mr. Lamar and was in contact with Mr. Dixon." [R. 72, Transcript, Page ID #359]. The magistrate claimed that this evidence "gave weight" to the United States' narrative that Boone was the broker or go-between connecting Lamar and the Hot Boyz. [R. 76, Memorandum Opinion and Order, Page ID #458]. Exactly how an in-common phone contact supports an allegation or conclusion that Boone brokered the deal between Lamar and the Hot Boyz is unclear. None of the text messages or other evidence discuss any murder plot or involve any discussion of planning for said murder.

The Court also pointed to a group text message in which Lewis' license plate number was circulated prior to his murder. Boone responded to that group message by inquiring as to "Who's tryna to run the k?" [R. 76, Memorandum Opinion & Order, Page ID# 456]. This was a reference to a video game played by Boone and others. Nowhere does Boone in that text chain acknowledge the license plate number or comment on it in any way.

Other than his mere association with identified Hot Boyz members, the proof of Boone's participation in this alleged conspiracy, as well as his prior knowledge of any murder-for-hire plot, is absent. There is, in fact, no direct evidence that Boone knew anything about the plot to kill Lewis prior to its occurrence, and the government did not present any such evidence at the detention hearing(s). At best, the government's proof at the detention hearing shows Boone may have discussed a payment with Dixon and Lamar sometime **after** the murder. Boone reasonably proffered that the discussion of the payment was for gambling debts owed by Lamar.

In the reopened detention hearing, the Court primarily considered the impact of the dismissal of criminal charges on Boone's overall dangerousness. It also considered Boone's conduct while detained during the past year and his proposed release conditions. [R. 304, Memorandum Opinion & Order, Page ID #2358]. The background on that state criminal case involved the arrest of Boone on December 28, 2020 with Daquis Sharp. That day, Ja'Quis Sharp, brother of Daquis Sharp, was murdered on Woodhill Drive in Lexington. Law enforcement was supposedly aware of the connection between Sharp, Gay, and Boone. Law enforcement was called to a different location – Mount Tabor Road – where they observed Gay with what appeared to be a firearm. Gay entered a vehicle Boone was driving and the three fled from law enforcement. Eventually, Boone fled the vehicle and was charged with fleeing and evading, entry of a commercial building (burglary), leaving the scene of an accident, failure to maintain insurance, and operating on a suspended license.

Those charges remained pending against Boone until November 21, 2025 when all state charges were dismissed. [R. 288-3]. The magistrate concluded that the "dismissal of the state charges against Boone changed the Court's danger calculus, but not enough." [R. 304, Memorandum Opinion & Order, Page ID# 2361]. The magistrate acknowledged that without the

state charges, Boone's only convictions are traffic violations and a misdemeanor charge for possession of marijuana. [Pretrial Services Report 3-6]. Ultimately, it found that the dismissed charges lowered Boone's dangerousness, but not substantially. According to the magistrate:

> Boone's prior affiliation with the Hot Boyz, his involvement in the attempted shooting of T.F., allegations of a sexual assault that resulted in a protective order against him, the Radcliff Road shooting, and the fleeing incident in December 2020, evince potentially serious, and sometimes violent conduct, even if criminal convictions did not result. The Court's analysis from it October 2025 opinion remains unchanged.

[R. 304, Memorandum Opinion & Order, Page ID# 2361].

Despite this conclusion, the magistrate acknowledged that "to the extent the United States desires to connect Boone's conduct to Ray's murder, it was unable to do so." [R. 304, Memorandum Opinion & Order, Page ID# 2360]. On cross-examination, Robinson acknowledged Gay, Boone and Sharp were first spotted some distance from where the murder occurred, and law enforcement did not know whether any of those men even knew of Ray's murder at the time. Robinson further acknowledged that while Sharp was convicted of his charges arising out of this incident, Gay was acquitted. An unrelated individual was later indicted, and convicted, of the murder of Ray. [R. 304, Memorandum Opinion & Order, Page ID# 2360-61].

The Defendant respectfully disagrees with the magistrate's conclusion. The evidence of Defendant's connection to the Hot Boyz was circumstantial at best (involving pictures of Boone with Hot Boyz members at a family gathering). The other incidents that are mentioned in the magistrate's conclusion are discussed below. In short, Defendant has no significant past criminal history. The incidents which the magistrate referred to that demonstrate dangerousness were testified to by Agent Robinson on the basis of hearsay information that was only reflected in police reports he did not author or investigate. None of the facts underlying those incidents was established by clear and convincing evidence.

**2. History and Characteristics of the Defendant**

As the Court noted, Boone is a 26-year-old, Lexington, Kentucky native. Boone lived in Lexington until February, 2024 when he moved to Louisville with Tamerra Maclin, his partner. [Pretrial Services Report at 1]. Boone and Maclin share twin, 15-month-old children, and lived together in a mobile home owned by Maclin's stepfather. [Pretrial Services Report at 2]. Originally, it was contemplated that Boone would return to that residence. However, a new pretrial release custodial arrangement has been made for Defendant Boone in the event that he is released. Tamerra Maclin's mother, Latasha Nicole Harper, is a registered nurse and works at Norton Women's & Children's Hospital. Tamerra (and the twins) reside with her mother at Ms. Harper's residence. Ms. Harper's two youngest daughters reside there as well. Ms. Harper is a stable, productive, employed adult who can properly monitor the Defendant and both assure his appearance before the Court as required and to alert the United States Probation Office in the event there is any breach of the conditions of release by Defendant Boone.[4]

The magistrate noted that until his arrest on the pending charges, Boone worked at Aramark Services for the last two years stationed at Ford Motor Company. [Pretrial Services Report at 2]. Boone worked at least 40 hours per week, but sometimes up to 60-70 hours per week. Boone has no mental or physical ailments, and reported only limited use of cannabinoids. [Pretrial Services Report at 3]. At the initial detention hearing, Maclin testified that Boone was "very active" with his children and watched them whenever he was not at work. Maclin works PRN as a certified nursing assistant, which allowed her to alternate her schedule with Boone for childcare purposes. She testified that most days that Boone fills his time with work and caring for his children. If

---

[4] Ms. Harper testified to these facts, and related matters, at the reopened hearing before the Court.

released, Boone would primarily care for his children, with the hope that the Court would allow him to search for employment to support his family. In Ms. Harper's residence, there is no alcohol, drugs or other illicit activities occurring.

In its original detention order, the Court relied heavily upon a series of incidents which demonstrated, in the Court's view, Boone's alleged association with the Hot Boyz which raised concerns regarding his association with individuals involved with violent crimes. It is clear, however, that most of the testimony of Special Agent Robinson – who relayed information regarding the events detailed in the Court's opinion – were based on pure hearsay. No individual with personal knowledge testified to any of the events described in the Court's opinion. [R. 76, Memorandum Opinion & Order, Page ID# 453-455]. Specifically, the Court relied on four different incidents testified to by Agent Robinson: (a) *attempted shooting of T.F.*; (b) *murder of Ja'Quis Ray*; (c) *protective order incident*; and (d) *Radcliff Road shooting*.

**a. *Attempted shooting of T.F.***

The Court found that in April, 2020, Boone and Sharp arrived at the home of victim T.F. Both were reportedly armed. Sharp attempted to discharge his weapon in the direction of T.F., however the weapon did not fire. T.F. got in her vehicle and fled, at which time Sharp was able to get several rounds fired off towards the victim. T.F. identified the perpetrators as Boone and Sharp. Sharp was criminally charged in state court; Boone however was *never charged* with any crime related to the incident. T.F. told law enforcement that she did not believe Boone fired his weapon. No witness with personal knowledge testified at the initial detention hearing regarding these allegation. While the Court correctly noted that the rules of evidence do not apply at such proceedings, there is a requirement that the information be reliable and accurate. Agent Robinson repeating what he read in a police report simply does not meet that standard – particularly where

the evidentiary standard is "clear and convincing" evidence. The reliability or accuracy of an incident reported to police cannot be tested or determined when there is no effective means of confrontation. Given these facts, this incident does not measurably contribute to the dangerousness calculation.

**b. *Murder of Ja'Quis Ray***

As noted above, the Court also relied upon an incident of the murder of Ja'Quis Ray, the brother of Daquis Sharp, on December 28, 2020. [R. 76, Memorandum Opinion & Order, Page ID # 453]. In the Court's description of those events, Boone was alleged to have assisted Quincy Gay in fleeing from a location loosely connected with the murder on Woodhill Drive. Subsequently, Boone and Sharp were ultimately arrested after allegedly evading police. At the time of their arrest, officers retrieved firearms from the vehicle Boone was driving.[5]

Although this incident resulted in state charges against Boone, those charges have now been dismissed. [See R. 288-3]. An adjudication from a court of competent jurisdiction that criminal charges are dismissed leads to the logical conclusion that the underlying facts should not be considered by the Court in making its dangerousness calculation. Thus, Boone now stands before this Court with virtually no prior criminal record, and no pending charges, with the exception of traffic infractions.[6]

**c. *Protective Order Incident***

Based on a police report, Agent Robinson testified that in January, 2021, Boone and Sharp were alleged to have possessed firearms and been "involved in" a sexual assault. The alleged

---

[5] Boone is not a convicted felon or otherwise a prohibited person from possessing weapons, and therefore was lawfully entitled to possess a firearm if, in fact, he did so.

[6] It should also be noted that Boone was on bond for those pending state charges for over 4 years with no violations, thus demonstrating his ability to comply with conditions of release.

assault did not result in any criminal charges against Boone (as noted by the Court) but did result in an interpersonal protective order by the victim against Boone that did not expire until May, 2023. [R. 76, Memorandum Opinion & Order, Page ID # 454]. This evidence is typical of the government's presentation. No one with personal knowledge of the events, nor any law enforcement agent who investigated the circumstances of the alleged crime, testified at the detention hearing. Additionally, there was no corroborating proof that any such incident occurred. Instead, and again, the Court relied upon Agent Robinson's narration of allegations contained in a police report – which he did not author – and was never pursued by prosecutorial authorities. This incident constitutes nothing more than hearsay, with literally no corroborating testimony or evidence. The United States presented no evidence that Boone was even present on such an occasion or any evidence that would support his participation in any alleged crime.

**d. *Radcliff Road Shooting***

As noted in the Court's Opinion, on January 3, 2021, there was a shooting on Radcliff Road in Lexington. The shooting occurred at the residence of a member of the Sleet family. The Court noted that the Hot Boyz and the Sleet family have a known gang rivalry that has resulted in several murders. The Court noted that in a police report a witness inside the Radcliff residence said that they *believed* Boone was responsible for the shooting. However, the magistrate specifically stated that the "United States could not produce any evidence to support that allegation," and largely discounted that incident in its analysis. [R. 76, Memorandum Opinion & Order, Page ID # 454]. The Court summed up those four incidents as follows:

> Although Boone has few criminal convictions, and no felony convictions, the above events indicate that throughout 2020 and 2021, Boone was repeatedly in imprudent situations that involved violence and firearms. While he has seemingly been living the life of a hard-working family man since the birth of his children, the court cannot discount these prior incidents.

[R. 76, Memorandum Opinion & Order, Page ID # 454-55].

As noted, all of these incidents were presumably provable – at least for detention hearing purposes – by the United States *had they called* witnesses with knowledge of the events at the detention hearing or provided corroborating evidence regarding these events. The repeated use of hearsay police reports regarding incidents where the Defendant was either never charged or charges were dismissed, cannot properly form the basis for a finding of dangerousness justifying indeterminate detention.

**3. <u>Weight of the Evidence</u>**

As the magistrate noted, this BRA factor is duplicative of the first and third because in considering a defendant's overall dangerousness, the Court must consider the fact of the crime alleged as well as the evidence that the Defendant has been dangerous in the past, such as criminal history and the history of violent behavior. [R. 76, Memorandum Opinion & Order, Page ID# 459]. While United States stressed Boone's involvement with the Hot Boyz, and the Lewis murder, not all of that evidence pertains to Boone. The Court focused on the following issues with respect to the evidence of dangerousness: (1) he was involved in several firearms incidents, one of which resulted in fleeing police and state charges, another which resulted in a protective order against him for more than two years; (2) Boone generally associates and promotes individuals loosely tied to numerous murders and shootings; (3) Boone has a demonstrated history of possessing firearms in and around other criminal activity (his own or others'); (4) Boone continued to associate with a group—including in their group chat—that openly discussed violent crimes; and (5) there is strong, circumstantial evidence suggesting Boone played a role in the murder of Kristopher Lewis. [R. 76, Memorandum Opinion & Order, Page ID# 459].

However, as the Court notes, Boone's connection to these issues in some instances is clear,

while in others, it is muddy, to say the least. [Id.]. The Court's recitation of those factors is flawed for a number of reasons. First, the evidence of Boone being involved in firearm incidents is sketchy at best. The fleeing and evading charges were subsequently dismissed, and while weapons were found in the vehicle, there is no evidence that any such weapons belonged to Boone. The civil protective order against him in connection with the alleged assault does not prove any criminal conduct by Boone.

Second, there was no evidence presented that Boone "promotes individuals loosely tied to numerous murders and shootings." This is speculation based on Agent Robinson's testimony without any evidentiary foundation, other than his familial connection to the Sharps. There is simply no evidence of Boone "promoting" the Hot Boyz that was presented at the hearings.

Third, Boone's association with a group, including being part of a group chat, that "openly discussed violent crimes" is not supported by the record. None of the text messages or other evidence presented at the detention hearings show any explicit discussion of violent crimes by Boone.

Finally, while the Court indicated that it found "strong circumstantial evidence suggesting that Boone played a role in the murder of Kristopher Lewis," that evidence is weak. To convict Boone on the Indictment charges, the United States must prove not only that Defendant Boone was aware of the plot to murder Kristopher Lewis, but that he voluntarily joined that conspiracy knowing its main object. The government produced zero evidence at the detention hearing that Boone had *any prior knowledge* of the murder-for-hire-plot; produced no evidence to demonstrate that he participated in the planning or surveillance of the victim; and produced no evidence that he was present on the day of the murder. The circumstantial evidence presented amounted to a few text messages to which the Defendant did not respond. The government's case against Boone is

largely based on association, inference, and hearsay. Consequently, this factor is pro-release.

**4. <u>Nature and Seriousness of Danger Posed by Release</u>**

This factor, set out in 18 U.S.C. § 3142(g)(4), favors release. The magistrate found that Boone's history of possessing firearms, his association with the Hot Boyz, and his contact with Rollie Lamar and William Dixon during the window of time when Kristopher Lewis was killed indicate a danger to other persons or the community. [R. 76, Memorandum Opinion & Order, Page ID# 460-61].

To the question of who is specifically endangered by the Defendant's release, the government has offered few specific examples. All of the Hot Boyz charged in this case are currently incarcerated and the Defendant has had little to no contact with them for the last 3 years. Defendant submits that his 3-year disassociation from all Hot Boyz activities and/or contact with the alleged participants in the Lewis murder favors release. In its detention decision, the Court leaned heavily on Boone's association with known members of a "criminal gang" to justify its dangerousness conclusion. If association with gang members compels a conclusion of dangerousness, then disassociation with gang members engaged in violence compels the opposite conclusion. That disassociation has continued throughout the course of his current incarceration. Unlike Defendant Waide, Boone has not had any contact with the co-defendants – with the minor exception of birthday or holiday greetings to his cousin – or any discussion of matters related to "gang activity" or this case. [R. 276, Memorandum Opinion & Order, Page ID# 2197-2199]. He separated himself from all his co-defendants in late 2023 and has had virtually no contact with them for the past 3 years.

This temporal distance is an important factor in the dangerousness analysis. That factor is featured in the district court's decision in *United States v. Diquan King*, Criminal Number 5:23-

cr-00142-GFVT-MAS-2. In *King*, the Defendant was charged with multiple counts of possession with intent to distribute a controlled substance and possession of a firearm in furtherance of a drug trafficking crime in violation of federal law. Despite the seriousness of the charges, Magistrate Judge Stinnett recommended that the Court release Defendant King on conditions. Upon review, the district court agreed with the magistrate's recommendation and conclusion that while King's charges are serious and involve dangerous activities, they are temporally distant and the government offered no evidence that King continued those activities – a mitigating factor especially in light of King's lack of criminal history. [R. 130, Order, Page ID # 676]. The district court agreed that King's "virtually non-existent criminal history," and the lack of any evidence to suggest he continued to engage in dangerous trafficking behavior, supported Judge Stinnett's release decision.

The same is true here. Lewis's murder occurred in September, 2023. The Indictment herein was not returned until October, 2025. During that period, as the magistrate judge noted, Boone did not engage in any criminal behavior and was disassociated with the Hot Boyz. Now, an additional year has passed with no association by Boone with any gang related activity. Thus, release with conditions is as appropriate in Boone's case as it was in Defendant King's case.

In addition to not being able to identify any specific potential persons endangered by Boone's release, the danger to the community is most effectively revealed by Boone's conduct over the last 3 years. His disassociation with the Hot Boyz (some of whom are related to him), his work history, and his new life in Louisville, Kentucky all demonstrate that Boone has changed the direction of his life. During this additional year of incarceration, Boone has been unable to see his children and frankly poses no danger to anyone.

Importantly, there were no direct eye-witnesses to the killing of Kristopher Lewis, other

than the Hot Boyz who allegedly participated in that crime. As indicated, all of those individuals are incarcerated. Thus, there are no other eye-witnesses who would be endangered by Boone's release.

## IV. DEFENDANT'S RELEASE PLAN/CONDITIONS

At the reopened detention hearing, Defendant presented a release plan with appropriate conditions to the magistrate judge. Defendant would reside with Latash Harper, his partner, Tamerra Maclin, and his children at Ms. Harper's residence. Defendant should be placed on home incarceration or home confinement. Additionally, Defendant can be prohibited from any contact with the co-defendants or witnesses connected to this case. Defendant can further be prohibited from use of a cell phone (with an exception for emergencies). Defendant's cell phone is currently in the possession of counsel for the Defendant as evidence in this matter.

These conditions would essentially incarcerate the Defendant at the home of Ms. Harper and adequately protect any person or the community from any future conduct of the Defendant.

## CONCLUSION

The Defendant's continued detention in this matter, with no trial date anywhere in sight, is punitive. Defendant has now been incarcerated for over a year, and is likely to be incarcerated for the entire next year, while this case winds its way through the death-penalty protocols for the co-defendants. Boone's behavior over the last 3 years evidences a young man who has changed the direction of his life and seeks to continue on that positive path while this case is litigated. Accordingly, Defendant should be released on the conditions set forth above.

Respectfully submitted,

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.
Law Offices of Thomas C. Lyons
201 West Short Street, Suite 820
Lexington, Kentucky 40507
859-231-0055
thomaslyons@hotmail.com
*Counsel for Defendant, Deangalo M. Boone*

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Revoke Detention Orders and for De Novo Review has been served on November 9, 2026 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.